# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| AREATHIA N. CASTRO | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) |
| | ) |
| CITY OF ALPHARETTA | ) Jury Trial Demand |
| | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff Areathia N. Castro (hereinafter "Plaintiff") by and through her undersigned counsel, and files this lawsuit against Defendant City of Alpharetta, Georgia (hereinafter "Defendant" or "Defendant Alpharetta") pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 alleging Race and Sex  (gender) discrimination, and in support thereof would further state as follows:

## INTRODUCTION

1. This is an action which arises pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 alleging Race (African American) and Sex/gender (Female) discrimination.

2. Defendant employed Plaintiff as a Police Patrol Officer with its Alpharetta Police Department.

3. During the employment of Plaintiff, Defendant committed violations of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 by  terminating Plaintiff's employment, and treating her disparately in comparison to her male comparators..

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).

5. All conditional precedents to jurisdiction under§ 706 of Title VII, 42

U.S.C. § 2005e-5 have occurred or have been complied with:

a. Plaintiff filed a Charge of Discrimination on the bases of Race and Sex /Genderwith the Equal Employment Opportunity Commission ("EEOC") within 180 days of the commission of the unlawful employment practices alleged therein (EXHIBIT A);

b. Notification of Right to Sue on the Charge of Discrimination was issued by the EEOC to Plaintiff  on August 5, 2022 (EXHIBIT B); and

c. This Complaint is filed within 90 days of the date receipt of the EEOC's Notification of Right to Sue which is dated .

6. Venue is proper in the Northern District of Georgia under 28 U.S.C. §1391 (a) and (c) because a substantial part of events or omissions giving rise to the claims occurred within the jurisdiction of this Court and because Defendant is located in this District and is subject to personal jurisdiction in this District.

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17.

## **PARTIES**

8. Plaintiff was residing in Johns Creek, Fulton County, Georgia (within this District) while employed by Defendant.

9. Plaintiff has since relocated to Battle Creek, Michigan.

10. At all times material to this action, Plaintiff was an "employee" of Defendant defined by § 203(e)(1) of the FLSA, and worked for Defendant within the territory of the United States.

10. Defendant Alpharetta  is a city within this State and District.

11. Defendant Alpharetta is subject to personal jurisdiction in the state of Georgia for purposes of this lawsuit and can be served through its City Attorney,

12. Defendant is located within this District at Alpharetta City Hall, 2 Park Plaza, Alpharetta, GA 30009

13. Defendant maintained either actual or constructive control, oversight and direction of Defendant's business, including the employment and pay and other practices of those operations of Defendant.

## FACTUAL ALLEGATIONS

14. Defendant city is a political subdivision which provides services to its citizens including police services.

15.   Plaintiff, an African American female, worked for Defendant from September 30, 2019  until her illegal termination on or about March 3, 2021, such termination for "policy violation." (See Exhibit C)

16. During her employment, Plaintiff was an excellent employee; she was never the subject of any complaint or grievance, neither from the public nor from any internal investigation except the one which immediately preceded the termination of her employment.

17. Before her termination, Plaintiff was even nominated to receive the Police Cross Award for her efforts trying to pull a woman from a burning vehicle..

18. For years Plaintiff was physically and mentally brutally treated by an abusive husband who many times had his hands around her throat, was slapped,

punched in the face, kicked in the stomach and even came to believe that one day he would kill her.

19. On February 11, 2021, Plaintiff's now estranged husband went to her home to sign divorce papers.

20. An argument ensued and John's Creek police were dispatched to Plaintiff's home on a report of a possible domestic dispute.

21. Subsequently no charges were filed by John's Creek police and Plaintiff later that day reported to work and completed a 12 hour shift from 5pm until 5am the next morning.

22. It is not clear to this writer how the Police Chief of the Alpharetta Police, Chief Robinson, found out about the events at Plaintiff's home on February 11, 2021, but he initiated an internal investigation that resulted in his terminating Plaintiff's employment for "Policy Violation."

23. Before being terminated, Plaintiff was not given any specifics as to why her employment ended.

24.  Plaintiff received disparate treatment both in terms of her race, African American, and because of her gender/sex, female as compared with a number of white comparators for example upon information and belief:

    a. Un-named for now white male policeman, was arrested for a domestic dispute and the stalking of his ex-wife. He was charged with stalking and simple battery (which constitutes that a physical assault occurred leaving visible injuries to his wife, along with the fact that on multiple occasions he went to where he was not

wanted with the intent to intimidate or harass his wife) by the Cherokee County Police Department. He was arrested at the Alpharetta Police Department.

He was not required to take a polygraph examination like Plaintiff, to establish if he was guilty of the crimes alleged against him. In fact, he was given the ability to continue working for the City of Alpharetta despite his arrest at the Police Department. He was removed from his position, and a civilian position was created for him, for a year, at the Alpharetta Police Department while he awaited his trial. After his charges were dismissed due to a "technicality" on the part of the Cherokee County Police Department, he was placed back on patrol. Surely he potentially violated several departmental policies, and despite the seriousness of the allegations against him, along with his arrest which means that probable cause (a reasonable basis that a crime was committed) was established by the arresting officer on scene who then obtained a signed warrant for his arrest from a Judge, he was still not given a polygraph examination to establish if he was truly innocent of physically assaulting or stalking his ex-wife. [1]

b. Another white male, was accused of sexual assault (a crime within the state of Georgia) by Officer Caitlin Lawrence who is a white female. Officer Lawrence alleged that he sexually assaulted her, while on duty for the City of Alpharetta,. Officer Lawrence alleged that he physically touched her in a sexual manner. Officer Lawrence reported the incident to supervisors. The male was not required to take a polygraph examination like Plaintiff, despite the seriousness of the allegations against him, which include a crime according to Georgia Law. Surely the allegations would constitute as potentially violating several departmental policies as well as Georgia laws, however he was able to maintain his position within the Alpharetta Police Department.

c. Another white male, was involved in a domestic dispute with his wife, due to his alleged sexual affair with an officer of the Roswell Police Department. During an intense verbal argument he punched a hole in the wall near his wife (which falls under Criminal Trespass Domestic Violence, within the State of Georgia). He was not required to take a polygraph examination, like Plaintif, to prove that he did not do so, nor did he receive any demotions, or corrective actions. He was instead allowed the ability to continue his employment with the City of Alpharetta for several years and allowed to retire receiving his full benefits from the City of Alpharetta.

d. A white female, lied about discharging her firearm towards a vehicle while on duty. A man was shot in the hip as a result. Surely, that is a serious incident, and she was initially untruthful about her actions. She later admitted that she fired her service weapon. She was not terminated from the City of Alpharetta and continued working until she resigned at a later date.

---

[1] Upon information and belief, the polygraph examiner who conducted he polygraph on Plaintiff alleged to the Alpharetta Police Department that she had failed the polygraph. It is also, upon information and belief, understood that the examiner testified similarly to POST but subsequently changed his testimony and told POST that Plaintiff's examination results were inconclusive.

25. On the other hand, upon information and belief, other African American comparators alleged receiving disparate treatment because of their race such as:

    a.    An African American male, was employed as a Patrol Officer for the City of Alpharetta. He was cleared by both the Roswell Police Department, and the Georgia Bureau of Investigations of any wrongdoing regarding allegations made against him. He was still investigated by the Alpharetta Police Department, and forced, like Plaintiff to take a polygraph examination which he was told that he passed. He was still terminated from his employment with the City of Alpharetta, and it is understood that he filed an EEOC complaint against the City of Alpharetta alleging race discrimination.

    b.    Another African American male, was a Patrol Officer for the City of Alpharetta. After multiple incidents he wished to file a grievance and wrote a letter to Bob Regus who is the Alpharetta City Administrator, on February 17, 2020, at 8:16:19 PM EST which was emailed to "Regus, Bob". The subject was titled "Grievance". In the letter Officer Vance spoke about the various ways in which African American Officers were treated differently than Caucasian Officers within the police department. He was ignored and given no response. He resigned shortly after and went to work for another Police Department.

    c.    Another black male employed by the Alpharetta Police Department, also filed an EEOC complaint against the City of Alpharetta alleging race discrimination

    d.    A black female, also filed an EEOC complaint alleging race discrimination.

26. Plaintiff was illegally terminated from the City's employ on March 3, 2021.

27. Defendant's actions were done with malice and or reckless indifference to the Plaintiff's federally protected rights.

28. Defendant has not acted in a good faith attempt to comply with the law by following policies and procedures designed to prohibit such discrimination in the workplace.

29. Plaintiff has suffered emotional pain and anguish as a result of the illegal actions of Defendant.

## COUNT I-GENDER-BASED DISCRIMINATION

1. Paragraphs 1-29 are re-alleged and incorporated.

2. This count sets forth a claim of gender-based discrimination against Defendant under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17.

3. As a female, Plaintiff is a member of a protected class. Plaintiff was qualified to do her job.

4. Plaintiff was treated differently than similarly situated male employees of Defendant.

5. Defendant terminated Plaintiff's employment.

6. The gender-based discrimination was with respect to the terms and conditions of Plaintiff's employment.

7. Plaintiff's gender was a motivating factor in Defendant's decision to terminate Plaintiff.

8. There was no legitimate business reason for Plaintiff's termination, and/or Defendant proffered legitimate business reason(s) was pretext for discrimination.

9. As a direct and proximate result of Defendant's conduct, described in

part above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue into the future.

## **COUNT II-RACE-BASED DISCRIMINATION**

1.      Paragraphs 1-29 are re-alleged and incorporated.

2.      This count sets forth a claim of race-based discrimination against Defendant  under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17

3.      As an African-American, Plaintiff is a member of a protected class.

4.      Plaintiff was qualified to do her job.

5.      Plaintiff was treated differently than similarly situated Caucasian employees of Defendant.

6.      Defendant terminated Plaintiff's employment.

7.      The race-based discrimination was with respect to the terms and conditions of Plaintiff's employment.

8.      Plaintiff's race was a motivating factor in Defendant's decision to terminate Plaintiff's employment.

9.     There was no legitimate business reason for Plaintiff's termination, and/or Defendant's proffered legitimate business reason was pretext for discrimination.

10.     As a direct and proximate result of Defendant's conduct, described in part above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue into the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this court grant the following relief:

(a)     that process issue and this court take jurisdiction over this cause;

(b)     that this court enter judgment against Defendant and for Plaintiff, granting equitable relief to Plaintiff under the applicable counts set forth above, mandating Defendants' obedience to the laws enumerated herein, and providing other equitable relief to Plaintiff;

(c)     that this court enter judgment against Defendants and for Plaintiff, awarding damages as stated herein to Plaintiff from Defendants for their violations of law enumerated herein;

(d)    that this court enter judgment against Defendants and for Plaintiff, permanently enjoining Defendants from future violations of law enumerated herein;

(e)    that this court enter judgment against Defendants and for Plaintiff, awarding Plaintiff costs, attorney's fees, and interest as allowed by law; and

(f)    that this court grant such other and further relief as is just and proper under the circumstances including but not limited to punitive and other compensatory damages.

Respectfully submitted this 4th day of November, 2022.

MARTIN & MARTIN, LLP

By:    /s/ Thomas F. Martin
Thomas F. Martin
tfmartinlaw@msn.com

Georgia Bar No. 482595

MARTIN & MARTIN, LLP
Post Office Box 1070
Tucker, Georgia 30085-1070
(770) 344-72